IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 24, 2018

**STATE OF TENNESSEE v. GAVINO TORRES, JR.**

**Appeal from the Criminal Court for Bradley County
No. 16-CR-167A    Sandra Donaghy, Judge**
_____

**No. E2017-01690-CCA-R3-CD**
_____

The Defendant, Gavino Torres, Jr., pled guilty to attempted possession of a Schedule I drug with intent to sell or deliver, a Class C felony; possession of a Schedule II drug with intent to sell or deliver, a Class C felony; and two counts of possession of a Schedule IV drug with intent to sell or deliver, Class D felonies, in exchange for an effective sentence of ten years with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court imposed a sentence of confinement, which the Defendant now challenges. After review, we affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ, joined.

Richard Hughes, District Public Defender, and Paul O. Moyle IV, Assistant Public Defender, for the appellant, Gavino Torres, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Andrew D. Watts, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was indicted for possession of a Schedule I drug, heroin, with intent to sell or deliver; possession of a Schedule II drug, methamphetamine, with intent to sell or deliver; possession of a Schedule IV drug, alprazolam, with intent to sell or

deliver; and possession of a Schedule IV drug, clonazepam, with intent to sell or deliver. He pled guilty to the lesser-included offense of attempted possession of a Schedule I drug with intent to sell or deliver in Count 1 and as charged in the remaining counts in exchange for a sentence of ten years with the manner of service to be determined by the trial court.[1]

At the sentencing hearing, Officer Sherry Gaston, an investigative report writer for the State of Tennessee Department of Correction, Probation and Parole, testified that she prepared the presentence report in this case. She said that she did not meet with the Defendant during her preparation of the report, although she attempted to contact him on several occasions. Officer Gaston elaborated that she sent the Defendant a letter on March 24, 2017, asking that he contact her to set up an interview for the presentence report. After she did not hear from the Defendant and the letter was returned as undeliverable, Officer Gaston called the phone number listed on the presentence order and spoke to the Defendant on April 19, 2017. The Defendant confirmed that his address was correct and asked her to resend the letter. After receiving no response from the second letter, Officer Gaston called the Defendant again on May 16, 2017, but no one answered the phone and there was no way to leave a voicemail. The post office returned the second letter as undeliverable on June 9, 2017.

The Defendant testified at the sentencing hearing that he was forty-six years old and had completed the 11th grade and obtained his GED. He earned some college credits in drug counseling while in federal prison. He admitted that he was convicted of a federal drug offense in the late 1990s. The Defendant said that he had been battling "a drug problem for the last thirty years." He elaborated that he began using heroin regularly at the age of 21 or 22, typically consuming a gram per day.

The Defendant testified that he moved to Cleveland, Tennessee, from Detroit, Michigan, in 2010 to "change [his] life." In Cleveland, he first worked in two fast food restaurants simultaneously for nine months before leaving those to obtain higher pay. He then worked at Mermaid Mattress for approximately a year before leaving it for a higher paying job. He next worked at Thompson's Industrial Services for a period of three years and, for a brief period thereafter, for A.T.C. Hilliard doing the same type of work. When his term ended at A.T.C. Hilliard, the Defendant worked for an individual named Boe Arthur doing landscaping and grounds-keeping.

The Defendant said that he continued to use opioids during his employment with Thompson's and thereafter, but he started using oxycodone and hydrocodone rather than "the heavy stuff." When he was arrested on these charges, he went through opioid

---

[1] The judgment for Count 4 is not included in the record on appeal.

withdrawal in jail. He had no confrontations with officers or other inmates in jail, and he volunteered to move to the faith-based pod where he took part in various programs. He was released on bond and went back to work for Boe Arthur for approximately three months. After that, he worked as a machine operator for Polar Tech until his most recent arrest.

The Defendant claimed that he failed to report for the initial date set for his sentencing hearing because he had been evicted and "wasn't prepared to come to court without [any] money." He said that his sister lived at the address he provided to the officer, but her mail was forwarded to another address. When asked why he did not meet with the presentence report officer after their conversation on the telephone, the Defendant said that he was "working five, six days, 12-hour days" but conceded "[t]here's no excuse for that. I mean, I could have made time." The Defendant acknowledged that he had a drug problem but asserted that incarceration would not "solve [his] problem" and that he would be "better off in society paying taxes . . . paying [his] dues."

On cross-examination, the Defendant acknowledged that he previously told the court that he did not sell drugs. However, he conceded that he pled guilty to possession of narcotics with intent to sell or deliver. The Defendant admitted that he sold heroin to a confidential informant but said that the person was a friend whom he did not know to be an informant. He also admitted to selling drugs to the informant on another occasion, but he claimed "I didn't sell it – what I mean by selling drugs, I wasn't benefitting nothing from it. I did a favor for somebody through somebody, because that person was going through withdrawals . . . I was just trying to help 'em out." However, he agreed that he took money from that person for having provided the drugs, but he insisted, "I wasn't no drug dealer. Drug dealers have nice cars, nice clothes. I wasn't out there like that. I worked everyday. I mean, I did a favor. Yes, I did. Yes, I did scrap that drugs, purchased it, and resold it to somebody else[.]"

After the conclusion of the testimony, the State asked the trial court to order that the Defendant serve his ten-year sentence in confinement. The Defendant argued that the court should consider the age of his prior convictions, his candidness about his prior crimes and drug problem, his consistent work history, and that he completed programs while in jail to help better himself. The Defendant asked the court to consider an alternative sentence, particularly community corrections under the special needs provision.

In determining the manner in which the Defendant's sentence would be served, the trial court first observed that the Defendant's charges stemmed from a search warrant based on two sales of heroin to a confidential informant. The court noted that when the

police executed the search warrant at the Defendant's house, they found heroin, methamphetamine, and Xanax and Klonopin pills. The court recalled that the Defendant failed to appear for his sentencing hearing on June 30, 2017. He was arrested on July 3, 2017, and was in custody when he was served with the search warrant. The court commented that it reflected poorly on the Defendant's amenability to supervision for him to explain his failure to appear by saying that he let his brother live with him and became homeless when "his brother did not pay his half of the rent for three days, [but] then [the Defendant] was arrested in a hotel on Paul Huff Parkway."

The court acknowledged a possible mail-forwarding problem with the letters sent by the presentence report officer. However, the court noted that the Defendant spoke with the officer on the phone and still did not meet with her to participate in the preparation of his report. The court recalled that the Defendant's explanation was that he was "just too busy." The court commended the Defendant for having a job and being a hard worker but said "you gotta' set priorities in your life, and knowing that you were gonna have someone you didn't know deciding where you were gonna spend the next ten years of your life . . . should have been a high priority issue[.]"

The court found that the Defendant had a drug addiction and needed treatment. The court observed that the Defendant had a good work history. The court noted that the Defendant obtained his GED and received some college training in drug counseling while in federal prison, and that he completed three foundation building classes while confined in jail. The court commented, "[Y]ou have made some of the greatest accomplishments in your life while you were confined" and "[C]onfinement seems to bring out the best in you."

The court considered the certified judgments from the Defendant's prior state convictions for attempted possession with intent to sell or deliver 50 to 224 grams of cocaine in 1999, and felony assault, domestic violence, and possession of marijuana with intent to deliver in 2008. The court noted that the Defendant received concurrent sentences of twenty-four months on probation for the 2008 convictions and was ordered to receive treatment at an inpatient facility. The court observed that the Defendant's arrest in the present case occurred five years after his release from supervision in the 2008 cases. In addition, the court noted that the Defendant openly acknowledged having a federal drug conviction.

The court found the Defendant to be a Range II offender and recognized the availability of probation, split confinement or full confinement. The court acknowledged the Defendant's request for community corrections. The court noted that the Defendant chose not to participate in the presentence report process and found his testimony "less than candid" as to his reasons why. The court observed that neither the State nor the

Defendant presented arguments regarding enhancement or mitigating factors. However, it reviewed the enhancement factors and determined that enhancement factor (1) applied because the Defendant had a history of criminal convictions or criminal behavior above that required to establish his range. The court also reviewed the mitigating factors and found that none were applicable. The court found that the nature and circumstances of the Defendant's current criminal conduct of felony drug offenses "all are crimes against society insomuch as they are drug offenses." However, the court did not deem the offenses as "enormous, gross, or heinous." The court took into account the Defendant's "physical and mental condition and [his] social history," as well as thoroughly reviewed the statistical information from the Administrative Office of the Courts regarding sentencing practices for similar offenses.

The court then considered the principles of sentencing and statutory bases for imposing a sentence of confinement. The court found that confinement was necessary to protect society because the Defendant had a long history of criminal conduct, including several prior felony convictions. The court gave great weight to the Defendant's criminal history. The court also found that confinement was necessary to avoid depreciating the seriousness of the offenses and to provide an effective deterrence to others, noting that "[t]hese crimes are very serious . . . [because] [a]ll drugs are a scourge upon society at this time . . . [and] [a]lmost every case that I touch in criminal court has drugs[.]" The court further found that measures less restrictive than confinement had frequently been applied unsuccessfully to the Defendant.

The court concluded that the Defendant was unlikely to abide by the terms of probation given his past behavior and that probation would not protect the interests of society. The court found that the Defendant was capable of rehabilitation, but noted that he could access rehabilitative programs in prison. The court said to the Defendant, "[Q]uite frankly, you seem to flourish while you are in confinement. I think you need a longer period of treatment in order to really invest and absorb all of these treatment considerations, so that when you are released, you can make it this time." The court, accordingly, imposed a sentence of confinement, and specifically denied the Defendant's request for community corrections.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred in failing to apply the catchall mitigating factor (13) based on his work history, imposing a sentence of confinement, and denying his request for special needs placement in the community corrections program.

A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

- 6 -

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

To qualify for consideration for punishment in the community, an offender must meet all of the following criteria:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

Tenn. Code Ann. § 40-36-106(a)(1).

Under the "special needs" provision of the statute, an offender who does not otherwise meet the criteria above "and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community" may be considered eligible for a community corrections sentence. Id. § 40-36-106(c). In making this determination, the trial court must first find that the defendant is eligible for probation and then must determine that (1) the defendant has a history of chronic alcohol, drug abuse, or mental health problems; (2) these factors were reasonably related to and contributed to the defendant's criminal conduct; (3) the identifiable special need(s) are treatable, and (4) the treatment of the special need could be best served in the community rather than in a correctional institution. State v. Grigsby, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997) (citations omitted).

However, even where a defendant meets the eligibility requirements of the statute, the defendant is not automatically entitled to participate. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998). The defendant "bears the burden of affirmatively showing a 'special need' which could be better addressed in the community." Grigsby, 957 S.W.2d at 547 n.11. Moreover, the trial court is in the best position to ascertain a defendant's amenability to a community corrections program given its ability to observe the defendant's demeanor and characteristics first hand. Id. at 547.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

As fully recounted above, the record shows that the trial court engaged in a detailed and thorough analysis to determine whether the Defendant should be granted anything less than a sentence of full confinement. The court was certainly aware of the Defendant's request for consideration for a variety of non-incarcerative options, including community corrections, and the court, in its discretion, determined that incarceration was appropriate. The Defendant simply disagrees with the weight given to his work history and the court's reasons for the sentence it imposed. However, again, the "abuse of discretion standard[ ] accompanied by a presumption of reasonableness" applies to all sentencing decisions, including "questions related to probation or any other alternative sentence." Caudle, 388 S.W.3d at 278-79. The trial court did not abuse its discretion in imposing a sentence of confinement.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the sentencing decision of the trial court.

_____
ALAN E. GLENN, JUDGE